IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| RIVER LAUREL GIFTS & BOUTIQUE, LLC and PAMELA ABBOTT | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: |
| TIFFANY MAILLET, | ) ) ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

River Laurel Gifts & Boutique, LLC ("River Laurel") and Pamela Abbott ("Ms. Abbott") (collectively, "Plaintiffs") file this Complaint against Tiffany Maillet ("Maillet" or "Defendant") as follows:

## INTRODUCTION

1.     Plaintiffs are forced to file this action because Defendant has and continues to post false comments about Plaintiffs as retribution due to a dispute between Maillet's mother, sisters, nieces, and nephew and a River Laurel employee.

2.     River Laurel Gifts & Boutique, LLC is a small boutique shop located in the small community of McCaysville, Georgia.

3.     Pamela Abbott is the sole proprietor of the female owned River Laurel Gifts & Boutique, LLC.

4.      On or about June 20, 2024, several members of Maillet's family, including her mother, sisters, nieces, and nephew, entered River Laurel's premises and damaged a perfume bottle and a souvenir magnetic rock in the store.

5.      On or about June 27, 2027, Maillet began posting numerous videos to TikTok, stating several false, disparaging facts regarding the incident, leading to substantial damage to Plaintiffs.

## PARTIES

6.      River Laurel is a Georgia limited liability company, formed on June 28, 2018, by Pamela Abbott, with a principal place of business located at 100 Blue Ridge Drive, Suite 108, McCaysville, Georgia 30555.

7.      Pamela Abbott is an individual residing in Canton, Georgia and the sole proprietor of River Laurel.

8.      On information and belief, Defendant Tiffany Maillet is an individual residing at 54 Bruce Ave. S., Lehigh, Florida 33976.

## JURISDICTION

9.      There exists complete diversity of citizenship between Plaintiffs and Defendant.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the action arises between a citizen of the state of Florida and an individual and a business with a principal place of business and domicile in the state of Georgia.

11.    The amount in controversy greatly exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests, costs, and attorneys' fees, as required to sustain subject-matter jurisdiction in this Court.

12.    Defendant is subject to personal jurisdiction in this Court because they committed tortious acts in the State of Georgia and has satisfied sufficient minimum contacts in the State of Georgia.

13.    Defendant is cognizant that their wrongful conduct harmed and continues to harm Plaintiffs in Georgia, where Plaintiffs are based.

14.    Defendant transacts business in the State of Georgia, including through the distribution of its content through the Internet, and Defendant committed the tortious acts identified herein in the State of Georgia.

15.    Defendant has intentionally sought and obtained benefits from its tortious acts in the State of Georgia.

16.    Defendant directed its conduct at Plaintiffs, both of which are citizens of Georgia.

17.    Ms. Abbott suffered substantial reputational and emotional harm in this District.

18.    River Laurel suffered substantial reputational harm in this District.

19.    There is a reasonable and direct nexus between Defendant's tortious

conduct in Georgia and the harm suffered by Plaintiffs in Georgia and beyond.

## VENUE

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant is subject to personal jurisdiction in this District and/or a substantial part of the events giving rise to this claim occurred in this District, including publication and injury.

## BACKGROUND

21.    Pamela Abbott is a businesswoman living in McCaysville, Georgia.

22.    Ms. Abbott formed River Laurel Gifts & Boutique, LLC in 2018.

23.    River Laurel Gifts & Boutique, LLC is a female owned, sole proprietor business operating in Georgia.

24.    River Laurel is a small boutique business that opened for business in March 2019 located in McCaysville, Georgia that offers a variety of specialty gifts and consumer goods.

25.    Ms. Abbott also opened a second location of River Laurel in Ball Ground, Georgia that opened March 8, 2024 and subsequently closed July 25, 2024

26.    Plaintiffs have created goodwill in their community based on the quality goods and services provided. A true and correct Declaration of Pamela Abbott is attached hereto as Exhibit A.

27.    The River Laurel Facebook page has over 1500 followers and many positive reviews (*see*, Exhibit A).

28.    In fact, between April 18, 2019 to March 18, 2024 River Laurel received numerous five-star ratings on the Chamber of Commerce business directory site and has an average rating of 4.8 stars (*see*, Exhibit B). Samples of these are shown below.



**MARIJANE DAVIS** on Google                                    **Mar 9th, 2024**

⭐⭐⭐⭐⭐

❝ One of my favorite shops, hands down! They always have the best selection of gifts and goodies, and the owner and staff are AWESOME at helping find the perfect gift. I called for a last minute Christmas gift from my team to our boss, and Pam went the extra mile to choose the perfect items, and had my bag ready to go, all I had to do was stop by and pick it up. You cant go wrong with River Laurel!!! ❞



**KELLY MACPHERSON** on Google                              **Mar 24th, 2023**

⭐⭐⭐⭐⭐

❝ This shop is set up beautifully and the owner is the absolute best. She's helped me on many occasions find the perfect gift. Even from an out of town order, she's quick to respond and will mail the package directly to the recipient. I love supporting small business and I highly recommend River Laurel Gifts. ❞



**LEANN MARTIN** on Google                    Dec 14th, 2022

⭐⭐⭐⭐⭐

❝ Great boutique for some unique gifts . . Staff was s very friendly and helpful .. love the items in this store ❞



**BILLY TERRISON** on Google                    Mar 6th, 2022

⭐⭐⭐⭐⭐

❝ WONDERFUL!!!! The women that helped us was great. Kind and patient. The prices in the store are well balanced as well. Honest shop owners. I would recommend everyone stop and buy! ❞



**JESSICA BOISVERT** on Google                    Jun 28th, 2019

⭐⭐⭐⭐⭐

❝ I love River Laurels fun, unique selection of must haves mostly for myself AND my husband also.
We spent the day browsing around Blueridge and Mccaysville and I was so excited when I walked in the boutique to find some quality items that werent in every other store. Very neat store with excellent customer service! ❞

29.     Additionally, River Laurel has multiple five-star ratings on Google a sampling of which is shown below.

6





30.     Unfortunately, based on the improper actions of Defendant, Plaintiffs have experienced a decline in positive reviews and an uptick in negative and harassing comments that have drastically affected the Plaintiffs reputationally and financially (*see*, Exhibit A).

## DETAILED FACTUAL BACKGROUND

## THE JUNE 20, 2024 INCIDENT

31.     On or about June 20, 2024, a group of teenage girls entered the River Laurel store located in McCaysville and began to browse the shop. A true and correct Declaration of Robin Moore is attached hereto as Exhibit C.

32.     While in the McCaysville River Laurel store, the girls continually tested several cosmetic and toiletry samples and disorganized displays. Within an hour, the girls left the store (*see*, Exhibit C).

33.     Robin Moore, a 70-year-old employee of the McCaysville River Laurel store, began reorganizing the ruined displays and discovered a broken perfume tester that was not broken prior to the girls' presence in the store (*see*, Exhibit C).

34.     Ms. Moore could not prove how the perfume tester was broken so did not address this matter when the same group of girls returned approximately thirty minutes later (*see*, Exhibit C).

35.     When the girls returned they were accompanied by two female adults and a young boy (*see*, Exhibit C).

36.     Ms. Moore observed the adults allowing the children to rummage about the store unsupervised (*see*, Exhibit C).

37.     During this time, Ms. Moore witnessed the young boy playing with rock magnets and dropping at least one causing it to break in half ("the June 20 Incident") (*see*, Exhibit C).

38.     Ms. Moore spoke with one of the adult women accompanying the boy, whom she presumed to be the boy's mother (the "boy's mother"), and explained that the boy's mother would have to pay for any damage caused to store merchandise. The boy claimed that the rock magnets were already cracked (*see*, Exhibit C).

39.     While the boy's mother was paying for the broken merchandise, the other adult woman in the group approached and began berating Ms. Moore for requiring payment for the damaged merchandise (*see*, Exhibit C).

40.     Ms. Moore was accused of requiring payment for merchandise and then keeping it. However, Ms. Moore was holding the broken magnetic rocks to show the women in the store that the magnetic rocks were in fact broken (*see*, Exhibit C).

41.     At the time Ms. Moore showed the broken magnetic rocks, the merchandise had not been paid for, but the other woman continued to yell and intimidate Ms. Moore, before eventually leaving the store (*see*, Exhibit C).

42.     The women were given the broken magnets after payment and left the store (*see*, Exhibit C).

43.     At no time during the June 20 Incident or after has the Defendant Tiffany Maillet ever entered the River Laurel store (*see*, Exhibit C).

**<u>DEFENDANT'S FALSE AND DISPARAGING ACTIONS</u>**

44.     On or about June 27, Defendant Tiffany Maillet created and posted a

TikTok video on her personal account falsely and disparagingly recounting details of the June 20 Incident (the "June 27 TikTok"). A true and correct recording is attached hereto as Exhibit D.

45.    During the June 27 TikTok, Defendant admitted she was not present at the time of the June 20 Incident (*see*, Exhibit D).

46.    Defendant's June 27 TikTok video went viral with over 2.2 million views, 250,000 likes, 4,500 comments, and 9,400 saves. In fact, many of these comments from the social media mob promised to create negative reviews themselves including one individual who offered to "fight this lady". (*see*, Exhibit E). Defendant's followers made good on these promises to post negative reviews as discussed below.







47.     Defendant's June 27 TikTok video resulted in multiple individuals who have never been to the McCaysville River Laurel store posting negative comments and reviews regarding Plaintiffs on the Chamber of Commerce, Facebook, and Instagram (*see*, Exhibit F).



48.     Defendant also posted a negative Google review claiming she witnessed the incident and disparaging Plaintiffs (*see*, Exhibit G).



49.    Enjoying her newfound notoriety on TikTok, Defendant recorded and posted a follow-up TikTok video on June 28, 2024 (the "June 28 TikTok"). A true and correct recording of the June 28 TikTok is attached hereto as Exhibit H.

50.    Defendant's relatives were given the broken magnets from the June 20 Incident after payment, which Defendant presented as "evidence" that the rocks would not break from dropping during the June 28 TikTok (*see*, Exhibit H).

51.    During the June 28, 2024 TikTok video, Defendant repeatedly and intentionally dropped the two magnets attempting to show they would not break. During these actions, the magnets did in fact break (*see*, Exhibit H).

52.     Defendant's June 28 TikTok video also went viral with nearly 10,500 likes, nearly 350 comments, and over 200 saves (*see*, Exhibit H).

53.     As a result of this continued harassment, on or about June 28, Ms. Abbott took down her personal Facebook and the River Laurel Facebook pages, resulting in the loss of ability to advertise the River Laurel business (*see*, Exhibit A).

54.     On or about June 28, Plaintiffs also turned off the comments to their Instagram accounts because of the malicious and defamatory comments (*see*, Exhibit A).

55.     Ms. Abbott was being harassed on these social media pages and the stress and anxiety was overwhelming (*see*, Exhibit A).

56.     In an attempt to clear her name and business, Ms. Abbott posted the security camera footage of the event on her personal Facebook page to show that the allegations made by Defendant were inaccurate (*see*, Exhibit A).

57.     Ms. Abbott experienced even more harassment and thus removed the security camera footage, upon the request of Maillet's family members, but she continued to receive threats consistently (*see*, Exhibit A).

58.     In an attempt to mitigate damages to the reputation of River Laurel, Ms. Abbott spent countless hours, including nights and weekends reaching out, to Google to informing Google of the reviews left by individuals who have never

shopped at River Laurel (*see*, Exhibit A).

59.     Eventually, Ms. Abbott received assistance from the Fannin County Chamber of Commerce employee, Kim Foster, who was able to assist in the removal of the false Google reviews in early July (*see*, Exhibit A).

60.     On or about July 1, 2024, Defendant posted another TikTok video stating that her social media posts related to "drama" resulted in personal financial gain in an excess of $1,280 over the last three day (*see*, Exhibit I). In fact, Defendant responded to negative reviews on the defamatory TikTok videos stating, "thanks for the view and comment . . . boosts my video AND gets me paid." (*see*, Exhibit J).





61.     Seeing no alternative to arrest the damage caused by Defendant's ongoing actions, Plaintiffs finally sought legal assistance to remedy this matter (*see*, Exhibit A).

62.     On or about July 1, 2024, Plaintiffs sent a cease-and-desist letter to Defendant via prior counsel, Ronald F. Debranski II. The letter demanded Defendant cease continued slanderous and defamatory videos and remove all social media videos related to Plaintiffs, as they were harmful to Plaintiffs (*see*, Exhibit K).

63.     In response to this letter, Defendant read the letter on her TikTok social media account on July 2, 2024 (the "July 2 TikTok") and doubled down on her accusations of misconduct by Plaintiffs claiming she was not lying despite again admitting she was not present and therefore all her "facts" are hearsay. A true and correct recording of the July 2 TikTok is attached hereto as Exhibit L.

64.     Throughout this ordeal, Ms. Abbott has been concerned about her

personal safety, that of her employees, and the security of the River Laurel store. Based on the vile comments directed at her and her store, Ms. Abbott feared Defendant or one of her followers would visit the store and intentionally break something to try to cause another incident (*see*, Exhibit A).

65.   Due to this concern, Ms. Abbott contacted the McCaysville Chief of Police, Michael Earley. Chief Earley agreed to have additional patrols visit the area around the River Laurel store (*see*, Exhibit A).

66.   Ms. Abbott's Ball Ground store was "business of the week" on a local Ball Ground page, but the Defendant's followers also found that post and began commenting and harassment on that social media account as well (*see*, Exhibit A).

67.   On or about July 5, 2024 Ms. Abbott finally requested the administrator of the Cherokee County Chamber of Commerce remove the Ball Ground ribbon cutting photo because of the negative comments (*see*, Exhibit A).

68.   Defendant made the False Statements to the public knowing that they were false and to purposely harm Plaintiffs' reputation and cause financial harm to Plaintiffs.

69.   Defendant's false statements include, but are not limited to, the following (the "False Statements"):

a.  Falsely stating or implying that Defendant knew personally of the events

that took place in the River Laurel store as recorded in Defendant's June 27 TikTok and July 2 TikTok;

b. Falsely stating or implying that Defendant's family members did not damage River Laurel's merchandise as recorded in Defendant's June 27 TikTok;

c. Falsely stating or implying that Plaintiffs attempted to retain the merchandise after purchase as recorded in Defendant's June 27 TikTok;

d. Falsely stating or implying that Plaintiffs or its affiliates pose a physical danger to Defendant as recorded in Defendant's a video shared to TikTok on July 3, 2024 stating (the "July 3 TikTok"); and

e. Falsely stating or implying that Plaintiffs or its affiliates were harassing and stalking Defendant as recorded in Defendant's June 27 TikTok.

70.    Further, it appears Defendant has a history and continued habit of posting defamatory and disparaging content regarding businesses on social media in order to get views and financial compensation.

71.    Plaintiffs have tried to resolve this matter amicably and then via prior counsel. Plaintiffs have exhausted all other options (*see*, Exhibit A).

72.    As a direct and proximate result of Defendant's conduct, Plaintiffs have lost and will lose business opportunities (*see*, Exhibit A).

## **COUNT I**

## DEFAMATION

73.     Plaintiffs repeat and reallege the allegations in the paragraphs above as if fully set forth herein.

74.     Defendant has published, made, and disseminated the False Statements.

75.     The False Statements made by Defendant are about and concerning Plaintiffs.

76.     The False Statements were without privilege and were made about and concerning Plaintiff Pamela Abbott, a private citizen, and Plaintiff River Laurel, a small business.

77.     Defendant intentionally communicated the False Statements to a broad network of third parties.

78.     The False Statements are false and misleading and refer to the character and reputation of Plaintiff Pamela Abbott.

79.     The False Statements are and would be highly offensive to a reasonable person and have been published to third parties with the apparent intent of causing harm to the reputation and economic interests of Plaintiffs.

80.     Defendant knew that the False Statements were false. Defendant also acted in reckless disregard as to the falsity of the False Statements.

81.     Defendant made the False Statements with the intent of destroying the

reputation of private citizen, Plaintiff Pamela Abbott, and small business, Plaintiff River Laurel in the marketplace; or alternatively, Defendant made the statements with malice and should have recognized that the False Statements were likely to cause harm to Plaintiff Pamela Abbott's personal reputation and both Plaintiffs' business interests.

82.     As a direct and proximate result of Defendant posting the False Statements, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury, including, but not limited to, damage to reputation, losses in revenues, loss in profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

83.     As a direct and proximate cause of Defendant's publishing of the False Statements, Plaintiffs have sustained, and will continue to sustain, monetary damages as a direct result of the False Statements, including the loss of business advertising opportunities based on the withdrawal social media pages and likely business revenue. These losses, have, in turn, caused Plaintiffs to suffer monetary damages.

84.     Plaintiffs are entitled to recover its costs and attorneys' fees from Defendant pursuant to O.C.G.A. § 13-6-11.

## COUNT II
## DEFAMATION PER SE

85.    Plaintiffs repeat and reallege the allegations in the paragraphs above as if fully set forth herein.

86.    Defendant has published, made, and disseminated the False Statements.

87.    The False Statements made by Defendant are about and concerning Plaintiffs.

88.    The False Statements were without privilege and were made about and concerning Plaintiff Pamela Abbott, a private citizen, and Plaintiff River Laurel, a small business.

89.    Defendant intentionally communicated the False Statements to a broad network of third parties.

90.    Defendant knew that the False Statements were false or acted in reckless disregard as to the falsity of the False Statements.

91.    Defendant made the False Statements with the intent of destroying the reputation of private citizen, Plaintiff Pamela Abbott, and small business, Plaintiff River Laurel in the marketplace; or alternatively, Defendant made the statements with malice and should have recognized that the False Statements were likely to cause harm to Plaintiff Pamela Abbott's personal reputation and both Plaintiffs'

business interests.

92.    As a direct and proximate result of Defendant posting the False Statements, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury, including, but not limited to, damage to reputation, losses in revenues, loss in profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

93.    At least one or more of the False Statements made by Defendant constitute defamation per se and general damages are presumed as a matter of law.

94.    Plaintiffs have suffered general and special damages in an amount to be proved at trial.

95.    In making the False Statements referenced above, Defendant acted maliciously, willfully, wantonly, and unlawfully.

96.    For such willful and malicious acts, Plaintiffs hereby seek punitive damages in addition to actual damages.

97.    Defendant's acts, omissions, conduct, and transactions alleged herein were intentional, and done willfully and maliciously toward Plaintiffs, and with conscious disregard for Plaintiffs' rights. Plaintiffs' injuries were intensified by the malicious conduct of Defendant, and Defendant's conduct justifies an award of

exemplary and punitive damages pursuant to O.C.G.A. § 51-12-5 and/or O.C.G.A. § 51-12-5.1.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS

98.   Plaintiffs repeat and reallege the allegations in the paragraphs above as if fully set forth herein.

99.   Plaintiffs have existing business relationships with customers, individuals, and other persons relating to the business.

100.   Plaintiffs have a reasonable expectation of future business relationships with prospective clients and employees, and others with whom Plaintiffs do business or with whom Plaintiffs may reasonably expect to do business. This expectancy is based, in part, on the considerable time, energy, and resources it takes to develop the goodwill and reputation associated with Plaintiffs' names.

101.   At all material times hereto, Defendant was aware of Plaintiffs' existing and/or prospective business relationships.

102.   As described herein, Defendant intentionally and/or purposefully interfered with Plaintiffs' existing and prospective relationships by unlawfully making the False Statements.

103.   As a direct and proximate result of Defendant's conduct described herein, Plaintiffs have sustained, and will continue to sustain, immediate and

irreparable harm and injury including, but not limited to, damage to reputation, loss in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

104.   Defendant's acts, omissions, conduct, and transactions alleged herein were intentional, and done willfully and maliciously toward Plaintiffs for the purpose of causing injury to Plaintiffs, and with conscious disregard for Plaintiffs' rights. Plaintiffs' injuries were intensified by the malicious conduct of Defendant, and Defendant's conduct justifies an award of exemplary and punitive damages pursuant to O.C.G.A. § 51-12-5 and/or O.C.G.A. § 51-12-5.1.

105.   Plaintiffs are entitled to recover its costs and attorneys' fees from Defendant pursuant to O.C.G.A. § 13-6-11 and/or other applicable law.

## COUNT IV
## FALSE LIGHT

106.   Plaintiffs repeat and reallege the allegations in the paragraphs above as if fully set forth herein.

107.   Defendant published the False Statements via the Internet intending for the public to have access to the False Statements.

108.   Members of the public have accessed and viewed the False Statements posted by Defendant.

109.    The False Statements depict Plaintiffs as something which they are not.

110.    As a direct and proximate result of Defendant's publication of the False Statements, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury, including but not limited to damage to reputation, loss of business relations, exist and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

### Damages

111.    The publication of the False and Defamatory Statements directly and proximately caused substantial and permanent damage to Plaintiffs.

112.    The False and Defamatory Statements were reshared by third-party members of a social media mob, which was reasonably foreseeable.

113.    The False and Defamatory Statements against Plaintiffs are defamatory per se, as they are libelous on their face without resort to additional facts, and as clearly demonstrated here, Plaintiffs was subjected to public hatred, contempt, scorn, obloquy, and shame.

114.    As a direct and proximate result of the False and Defamatory Statements, Plaintiffs suffered permanent harm to their reputations, specifically Ms. Abbott to her personal and professional reputation and River Laurel to its business name.

115.   As a direct and proximate result of the False and Defamatory Statements Ms. Abbott suffered severe emotional and mental distress.

116.   As a direct and proximate result of the False and Defamatory Statements Ms. Abbott is forced to live her life in a constant state of concern over her safety and the safety of her employees at River Laurel.

117.   Defendant published its False and Defamatory Statements with actual malice and common law malice, thereby entitling Plaintiffs to an award of punitive damages.

118.   Defendant's conduct was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

119.   Plaintiffs are entitled to an award of punitive damages to punish Defendant and to deter it from repeating such egregiously unlawful misconduct in the future.

## **Jury Demand**

Plaintiffs demand a trial by jury for all issues so triable.

## **Prayer For Relief**

WHEREFORE, Plaintiffs request the following relief against Defendant as follows:

A.   For compensatory damages in an amount to be proven at trial;

B.      For all other general damages in an amount to be proven at trial;

C.      For all other special damages in an amount to be proven at trial;

D.      For punitive damages, including damages under O.C.G.A. § 51-12-5 and/or O.C.G.A. § 51-12-5.1;

E.      For Plaintiffs' costs incurred herein;

F.      For Plaintiffs' reasonable attorneys' fees incurred herein;

G.      For interest on the foregoing attorneys' fees and court costs at the statutory interest rate from the date of judgment until paid;

H.      For prejudgment and post-judgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

I.      For such other and further relief as the Court deems just and proper.

Respectfully submitted, September 3, 2024.

/s/Kennington R. Groff
Zachary C. Eyster
GA Bar No.: 192335
Kennington R. Groff
GA Bar No.: 782901
Melanie K. Lane
GA Bar No.: 831941

BEKIARES ELIEZER, LLP
2870 Peachtree Rd. #512
Atlanta GA 30305
Telephone: 404.537.3686
zeyster@founderslegal.com
kgroff@founderslegal.com
mlane@founderslegal.com